# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20333

———————

Antonio Martinelli,

*Plaintiff—Appellee*,

*versus*

Hearst Newspapers, L.L.C.; Hearst Magazine Media,
Incorporated,

*Defendants—Appellants*.

———————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3412

———————————————

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

A civil action for copyright infringement under the Copyright Act of 1976 must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In *Graper v. Mid-Continent Casualty Co.*, our court decided that this limitations period starts running "once the plaintiff knows or has reason to know of the injury upon which the claim is based," which is also known as the discovery rule. 756 F.3d 388, 393 (5th Cir. 2014) (cleaned up). Today, appellants Hearst Newspapers, L.L.C. and Hearst Magazine Media, Incorporated (collective, "Hearst") ask us to replace the discovery rule with

No. 22-20333

a holding that the clock starts when an act of copyright infringement occurs. Hearst argues that *Graper* is no longer binding in light of the Supreme Court's decisions in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), and *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019). Since neither of those cases unequivocally overruled *Graper*, we AFFIRM.

I.

In 2015, Sotheby's International Realty commissioned Antonio Martinelli to photograph Lugalla, an Irish estate owned by the Guinness family.[1] Martinelli took seven photographs of the property, and Lugalla was subsequently listed for sale.

On March 7, 2017, Hearst Newspapers used Martinelli's photographs in a web-only article, "The 'Guinness Castle' in Ireland Is on the Market," which Hearst Newspapers published on websites associated with the Houston Chronicle, the San Francisco Chronicle, the Times Union, the Greenwich Time, and The Middletown Press. Six days later, Hearst Newspapers again used the photographs in a web-only article available on those websites. The next day, a different entity called Hearst Communications used four of the photographs in a web-only article published on a website associated with Elle Décor magazine.

Martinelli first discovered the Houston Chronicle article on November 17, 2018. Between September 2019 and May 2020, Martinelli discovered the article on the websites of the San Francisco Chronicle, the Times Union, the Greenwich Time, and The Middletown Press. On February 19, 2020, Martinelli discovered the article on the Elle Décor

---

[1] We adopt the parties' spelling of the estate's name, even though the more widely accepted spelling appears to be "Luggala."

website.  Hearst has stipulated that Martinelli could not have discovered those uses of his photographs with reasonable diligence at earlier times.

On October 18, 2021, Martinelli sued Hearst Newspapers for copyright infringement, alleging that the Houston Chronicle's website had used Martinelli's photographs without permission.  On February 11, 2022, Martinelli amended his complaint to bring a copyright infringement claim against Hearst Magazine Media, Inc.—the current owner of the Elle Décor copyrights—and to allege that his photographs were also used on websites associated with the San Francisco Chronicle, the Times Union, the Greenwich Time, and The Middletown Press.  Martinelli brought these claims within three years of discovering the infringements but more than three years after the infringements occurred.

The parties cross-moved for summary judgment, stipulating that Hearst committed copyright infringement and that Martinelli would be entitled to $10,000 if he prevails.  Hearst argued that intervening Supreme Court decisions "undermined" this circuit's discovery rule and that Martinelli's claims were untimely because they accrued when Hearst infringed Martinelli's copyrights.  The district court rejected this argument, followed *Graper*, granted Martinelli's motion for summary judgment, and denied Hearst's motion.

Hearst timely appealed.

## II.

On appeal, Hearst argues that Martinelli's claims are time-barred because a claim accrues under § 507(b) when the infringement occurs.  Hearst recognizes that under this circuit's precedents, the § 507(b) limitations period starts when the plaintiff "knows or has reason to know of the injury upon which the claim is based."  *Graper*, 756 F.3d at 393 (cleaned up).  Yet Hearst contends that the Supreme Court's decisions in *Petrella* and

*Rotkiske* "undermined the reasoning of [this circuit's] precedents" such that the rule of orderliness does not require this court to follow the discovery rule. *Petrella* and *Rotkiske* had no such effect. Accordingly, as the district court concluded, Martinelli's claims were timely under *Graper*.

## A.

Under this circuit's rule of orderliness, "one panel . . . may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008); *see United States v. Alcantar*, 733 F.3d 143, 145-46 (5th Cir. 2013). "[F]or a Supreme Court decision to change our [c]ircuit's law, it must . . . unequivocally overrule prior precedent." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (cleaned up); *Brotherhood of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337, 344 (5th Cir. 2022) (similar). Neither "a mere 'hint' of how the [Supreme] Court might rule in the future," *Alcantar*, 733 F.3d at 146, nor a decision that is "merely illuminating with respect to the case before [us]" will permit a subsequent panel to depart from circuit precedent, *Tech. Automation*, 673 F.3d at 405.

Following these principles, where an intervening Supreme Court decision "fundamentally changes the focus of the relevant analysis," our precedents relying on that analysis are "implicitly overruled." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (cleaned up). But this is only true when the changed analysis clearly applies to the case before us, such that we are "unequivocally directed by controlling Supreme Court precedent" to "overrule the decision of [the] prior panel," *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991); *see Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018) ("Such a change occurs, for

example, when the Supreme Court disavows the mode of analysis on which our precedent relied."); *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010) (examining whether a Supreme Court decision "establishes a rule of law inconsistent with our own" (cleaned up)).

## B.

The parties identify six cases, three of which are published and binding, in which this circuit arguably held that a copyright infringement claim accrues "once the plaintiff knows or has reason to know of the injury upon which the claim is based." *Graper*, 756 F.3d at 393 (cleaned up); *see Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006); *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 (5th Cir. 1971); *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 264 (5th Cir. 2014) (per curiam) (unpublished); *Jordan v. Sony BMG Music Ent. Inc.*, 354 F. App'x 942, 945 (5th Cir. 2009) (per curiam) (unpublished); *Groden v. Allen*, 279 F. App'x 290, 294 (5th Cir. 2008) (per curiam) (unpublished). Out of our three published authorities, only *Graper* squarely held the discovery rule applies to a copyright infringement claim. *See* 756 F.3d at 393. None of these cases explains why the discovery rule applies to a copyright infringement claim.

*Graper* resolved an insurance coverage dispute. The insureds were sued for copyright infringement, and after they tendered the claim to the insurer, the insurer agreed to defend them subject to a reservation of rights. *Id.* at 390. One of the bases for exclusion of coverage was "that the injury may not have occurred during policy coverage dates." *Id.* at 391. The insureds then retained their own counsel to defend the copyright infringement suit because "they believed there was a disqualifying conflict of interest between them and any counsel [the insurer] chose," and they filed a separate declaratory action to determine their rights under the relevant policies. *Id.*

On appeal, the only issue was "whether [the insurer] was obligated to pay for the [i]nsureds' selected counsel to defend the [copyright infringement] claims." *Id.* The court explained that an obligation to pay for an insured's selected counsel arises if the insurer's chosen counsel has a disqualifying conflict of interest. *Id.* at 392. Such a conflict of interest exists if "the facts to be adjudicated in the underlying lawsuit are the same facts upon which coverage depends." *Id.* (cleaned up). The insureds argued that because they defended the "copyright claims on grounds that the claims 'accrued' outside the applicable time provided by the statute of limitations" and because the insurer "reserved the right to deny coverage of the . . . claims on grounds that the alleged acts of infringement . . . 'occurred' outside the time the policy was in effect," "many of the same facts [would] determine both the [i]nsureds' liability and the [i]nsureds' coverage." *Id.* at 393.

We disagreed, holding that no disqualifying conflict of interest existed because the limitations period for a copyright-infringement claim runs from the date that the infringement is discovered, not the date that the infringement occurs. *Id.* at 393-94. "In litigating the [i]nsureds' statute of limitation defense," counsel "would only need to have adjudicated the fact of when the claim *accrued*, not the fact of when the acts of infringement *occurred*," *id.* at 393 (emphasis in original), and we explained that "[a] claim accrues once the plaintiff knows or has reason to know of the injury upon which the claim is based," *id.* (quotation marks and alterations omitted) (quoting *Jordan*, 354 F. App'x at 945). Although adjudication of the date when the infringement was discovered "would signal, in subsequent litigation, that the infringing conduct occurred before that date of discovery," "such a determination . . . would lack the specificity necessary to decide whether the claim was covered under the [i]nsureds' policy." *Id.* (emphasis omitted).

No. 22-20333

Although it was necessary to the decision in *Graper* that the discovery rule controlled the limitations period for a copyright infringement claim, *Graper* did not explain why the discovery rule applied. Instead, as noted above, the discovery rule holding in *Graper* quoted from our unpublished decision in *Jordan v. Sony BMG Music Entertainment Inc. See* 354 F. App'x at 945.[2] At most, *Graper* included a footnote recognizing that "[o]ther circuits agree that this is the proper inquiry" without endorsing the reasoning of those out-of-circuit decisions. *Graper*, 756 F.3d at 393 n.5 (citing *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013 (10th Cir. 2013); and *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009)).

Two other recent unpublished cases from this court apply the discovery rule to copyright infringement claims without giving a rationale. *See Aspen*, 569 F. App'x at 264 (stating that "the discovery rule . . . appl[ies] to . . . infringement claims"); *Groden*, 279 F. App'x at 294 (stating that "the relevant inquiry" under § 507(b) "is when the claim accrued, not when the infringement occurred"). Both cases rely on our earlier published decision in *Prather v. Neva Paperbacks, Inc. See Aspen*, 569 F. App'x at 264 n.8.; *Groden*, 279 F. App'x at 294.

However, *Prather* concerned whether the "fraudulent concealment" of a copyright infringement cause of action "by the defendant will [equitably]

---

[2] In turn, *Jordan* does not explain why the discovery rule applies to copyright infringement claims and instead quotes from our published decision in *Pritchett v. Pound*. 354 F. App'x at 945 (quoting *Pritchett*, 473 F.3d at 220). But *Pritchett* involved a copyright ownership claim, did not address whether the discovery rule applied to a copyright infringement claim, and also did not explain why the discovery rule applied to the claims at issue. *See Pritchett*, 473 F.3d at 220. Instead, it cited to a Second Circuit case that similarly does not explain why the discovery rule applies to a copyright ownership claim. *See id.* (citing *Est. of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 165 (2d Cir. 2003)).

toll the statute of limitations" under the Copyright Act as amended in 1957.[3] 446 F.2d at 341. The district court had found "that the last publication of the alleged infringing work occurred in June, 1964, but [the] suit was not filed until August, 1969," and "no circumstances . . . excuse[d] plaintiff's lack of knowledge of the infringement." *Id.* at 339. On appeal, we considered only whether the plaintiff was entitled to equitable tolling. *Id.* at 339-41.

At the outset, we refused to apply a Florida-law equitable doctrine called the "Blameless Ignorance rule" because enforcing "a peculiarly local doctrine" would "frustrate the Congressional goal of homogeneity" in enacting a uniform three-year limitations period. *Id.* at 339-40. Then, we considered whether the federal-law fraudulent concealment doctrine tolled the limitations period. *Id.* at 340-41. The plaintiff argued that the defendants had concealed the existence of a book that infringed his copyrights "and prevented him from obtaining a copy of that book." *Id.* at 340. But the court concluded that the defendants had not fraudulently concealed the book because the plaintiff knew about the book all along. *Id.* at 341. That the "plaintiff was unable to procure a copy of the [allegedly infringing book was] insufficient to show the successful concealment necessary to toll the statute of limitations." *Id.* In more general terms, we said that "[o]nce [a] plaintiff is on inquiry that it has a potential claim, the statute can start to run," even

---

[3] As the Supreme Court explained in *Petrella*, "[u]ntil 1957, federal copyright law did not include a statute of limitations for civil suits," and so federal courts "used analogous state statutes of limitations." 572 U.S. at 669. In 1957, Congress added a three-year limitations period for civil claims, which read, "[n]o civil action shall be maintained under [the Act] unless the same is commenced within three years after the claim accrued." *See* Act of Sept. 7, 1957, Pub. L. 85–313, 71 Stat. 633, 17 U.S.C. § 115(b) (1958 ed.). Essentially the same language was recodified in the Copyright Act of 1976: "No civil action shall be maintained under [the Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b); *see Petrella*, 572 U.S. at 670 n.3 ("The Copyright Act was pervasively revised in 1976, but the three-year look-back statute of limitations has remained materially unchanged.").

if the plaintiff has not yet "obtain[ed] a thorough understanding of all the facts." *Id.* (citation omitted). *Prather* borrowed this principle from a decision of the Court of Claims, which explained that "[t]his standard is in line with the modern philosophy of pleading which has reduced the requirements of the petition and left for discovery and other pretrial procedures the opportunity to flesh out claims and to define more narrowly the disputed facts and issues." *Id.* (quoting *Japanese War Notes Claimants Ass'n of Philippines, Inc. v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967)). As *Prather* put it, "[t]he bells do not toll the limitations statute while one ferrets the facts." *Id.*

Thus, in *Prather*, we appear to have assumed that the statute of limitations would bar the plaintiff's claim unless the fraudulent concealment doctrine applied. And since the plaintiff knew about the alleged infringement, he could not assert that the defendants had concealed it. So *Prather* narrowly held that a plaintiff's inability to obtain evidence of infringement does not equitably toll the limitations period under a fraudulent concealment theory. The issue of whether the limitations period of the Copyright Act as amended in 1957 started running when the defendants published the book or when the plaintiff discovered the book was not clearly raised or resolved.

In sum, *Graper* is the only precedent binding this court to apply the discovery rule with respect to the § 507(b) limitations period for copyright infringement claims.

## C.

Hearst argues that the panel "need not . . . follow[]" this circuit's discovery rule because cases like *Graper* "cannot be reconciled" with *Petrella* and *Rotkiske*. But *Petrella* and *Rotkiske* did not "unequivocally overrule" *Graper*, either by holding that the limitations period in § 507(b) starts running

when infringement occurs or by "fundamentally chang[ing] the focus of the relevant analysis" with respect to the Copyright Act. *Bonvillian*, 19 F.4th at 792 (cleaned up). To the contrary, *Petrella* and *Rotkiske* leave open the possibility that in a later case, the Supreme Court might decide that the discovery rule does apply to § 507(b).

1.

In *Petrella*, the Court decided under what circumstances a defendant can assert the equitable defense of laches—an "unreasonable, prejudicial delay in commencing suit"—against a copyright infringement claim that is brought within § 507(b)'s limitations period. 572 U.S. at 667. The Court held that although laches cannot preclude a timely claim for damages, in "extraordinary circumstances," laches may bar equitable relief. *Id.* at 667-68. But the Court left for another day the question of whether discovery or occurrence of an infringing act triggers § 507(b).

Before reaching the question of whether a laches defense was available, the Court explained how the § 507(b) limitations period works. *Id.* at 669-72. The Court noted that "[a] claim ordinarily accrues when a plaintiff has a complete and present cause of action," and then stated that "[a] copyright claim thus arises or accrues when an infringing act occurs." *Id.* at 670 (cleaned up). However, in a corresponding footnote, the Court clarified that "[a]lthough we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Id.* at 670 n.4 (cleaned up).

Although the Court appears to have assumed without deciding that the limitations period starts to run when the infringement occurs, that assumption was not necessary to the Court's decision. The Court held that

laches may not be invoked as a bar to damages under the Copyright Act because § 507(b) "itself takes account of delay." *Id.* at 677. Specifically, under "the separate-accrual rule," "the statute of limitations runs separately from each violation" of the Copyright Act, meaning that "each infringing act starts a new limitations period." *Id.* at 671. Because "a successful plaintiff can gain retrospective relief only three years back from the time of suit," the plaintiff could not reach the defendant's "returns on its investments" realized earlier than three-years prior to the date of the suit. *Id.* at 677. None of this analysis requires that the limitations period start running with the infringing act—only that the plaintiff's recovery be limited to a three-year window "from the time of suit," and that separate infringing acts trigger separate limitations periods. *Id.*

In rebutting the counterargument that laches should be treated like equitable tolling and read into every federal statute of limitations, the Court said that unlike tolling, laches "originally served as a guide when no statute of limitations controlled the claim" and "can scarcely be described as a rule for interpreting a statutory prescription." *Id.* at 681-82. To illustrate the point, the Court noted that § 507(b) "makes the starting trigger an infringing act committed three years back from the commencement of suit, while laches, as conceived by [the court of appeals] and advanced by [the respondent], makes the presumptive trigger the defendant's initial infringing act." *Id.* at 682 (emphasis omitted). But the Court's gloss on what condition triggers the limitations period was not necessary to the Court's point that § 507(b) contained a limitations period, and so there was no need to use laches "as a guide." *Id.* at 681. After all, regardless of whether the discovery or occurrence of infringement starts the clock, what mattered to the Court was that the "limitations period . . . coupled to the separate-accrual rule . . . . allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle." *Id.* at 682-83.

The Court later confirmed that *Petrella* didn't disturb the discovery rule in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328 (2017). There, the Court decided that laches could not be asserted as a defense against a timely claim for damages from patent infringement under the Patent Act, 35 U.S.C. § 286. *SCA Hygiene*, 580 U.S. at 346. The infringer tried to distinguish *Petrella* on the basis that unlike § 507(b), § 286 was not a "true statute of limitations" because it "runs backward from the time of suit." *Id.* at 336 (citation omitted). The Court rejected this distinction, explaining that *Petrella* described § 507(b) as "a three year look-back limitations period" that "allows plaintiffs to gain retrospective relief running only three years back from the date the complaint was filed." *Id.* at 336-37 (cleaned up and emphasis omitted). Nor was the Court persuaded that § 286 of the Patent Act is different from § 507(b) because § 286 "turns only on when the infringer is sued, regardless of when the patentee learned of the infringement." *Id.* at 337 (citation omitted). The Court quoted *Petrella* that "a claim ordinarily accrues when a plaintiff has a complete and present cause of action," and further explained that "[w]hile some claims are subject to a 'discovery rule' . . . that is not a universal feature of statutes of limitations." *Id.* (cleaned up). The Court further recognized that "in *Petrella,* we specifically noted that 'we have not passed on the question' whether the Copyright Act's statute of limitations is governed by such a rule." *Id.* at 337-38 (citation omitted).

Hearst acknowledges that *Petrella* did not decide whether the statute of limitations in § 507(b) starts running when the infringing act occurs or is discovered. So instead of arguing that *Petrella* unequivocally overruled *Graper*, Hearst contends that "the Court's articulation of when claims generally accrue, and its explanation [of] how statutes of limitations generally work, leads to the conclusion that [the discovery rule] does not apply" to

§ 507(b).[4] *Petrella* does not lead to that conclusion. But even if it did, under this circuit's rule of orderliness, we would still be bound to *Graper*.

*Petrella*'s general statements about statutes of limitation and the separate-accrual rule leave room for caselaw holding that the discovery rule applies to § 507(b). *Petrella* said that limitations periods "generally begin[] to run at the point when the plaintiff can file suit and obtain relief," assumed that "[a] copyright claim . . . accrues when an infringing act occurs," and reasoned that "each infringing act starts a new limitations period" under the separate-accrual rule. *Petrella*, 572 U.S. at 670-71 (cleaned up). But the Court did "not pass[]" on whether the § 507(b) limitations period is triggered by discovery of infringement. *Id.* at 670 n.4; *see SCA Hygiene*, 580 U.S. at 337. Instead, the Court left open the possibility that at the time of § 507(b)'s enactment, a copyright infringement claim accrued like claims arising from "latent disease and medical malpractice," *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001), which are "unknown or unknowable until the injury manifests itself," *Rotella v. Wood*, 528 U.S. 549, 556 (2000) (citation omitted), and for which the Court has "recognized a prevailing discovery rule," *TRW Inc.*, 534 U.S. at 27.

However, even accepting as true that *Petrella* "leads to the conclusion that" the discovery rule does not apply to § 507(b), the rule of orderliness still requires us to follow *Graper*. As set forth above, *Petrella*'s statements suggesting that a copyright infringement claim accrues when the

---

[4] *Graper* issued on June 24, 2014, about a month after *Petrella*. *See* 572 U.S. 663 (decided May 19, 2014). However, as Hearst points out, just because *Graper* came out after *Petrella* doesn't mean that *Graper* actually decided that the discovery rule survives *Petrella*. *See Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018). *Graper* did not mention *Petrella* or address whether *Petrella* foreclosed the discovery rule, and no party appears to have brought *Petrella* to the court's attention. The issue of whether *Petrella* unequivocally overruled the discovery rule is accordingly before us as a matter of first impression.

infringement occurs are dicta, which do not bind us and are therefore at most "merely illuminating" with respect to this case. *Tech. Automation*, 673 F.3d at 405.

This court's decision in *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.* does not compel a different result. 948 F.3d 261 (5th Cir. 2020). There, we did not interpret *Petrella* as unequivocally overruling *Graper*, and we certainly did not bind future courts to such an interpretation. Rather, we decided that "mitigation is not an absolute defense to statutory damages under the Copyright Act." *Id.* at 275. Before reaching that holding, we explained that the viability of a mitigation defense turned on "whether the Copyright Act contains a statutory purpose" contrary to "the common-law principle of mitigation," and we summarized *Petrella* because "statutory purpose and the nature of the common-law defense asserted . . . were central to [that case]." *Id.* at 270-71. In our recap of *Petrella*, we said in a footnote that "[t]he rule of separate accrual, as discussed in *Petrella*, takes as given that a copyright claim accrues when an infringing act occurs (the 'incident of injury' rule) and treats each successive infringing act as a new, independent wrong with its own limitations period." *Id.* at 271 n.5. This footnote simply reiterates that *Petrella* assumed without deciding that a copyright infringement claim accrues when the infringement occurs. It does not say that *Graper* is bad law. Indeed, even if we are bound to this claim that *Petrella* assumed that the "incident of injury" rule applies, as discussed above, it might still be that the limitations period in § 507(b) starts running at the discovery of each infringing act.

In any event, the *Energy Intelligence* footnote is dicta to which the rule of orderliness does not apply. *Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015) (citation omitted). Our decision that mitigation is not an absolute defense to statutory damages was based on the insight that statutory damages under the Copyright Act "are not solely intended to approximate actual

damages," "serve purposes that include deterrence," and "are therefore distinct from the type of damages that are typically calculated according to rules of mitigation." *Energy Intel. Grp.*, 948 F.3d at 274. Although we rejected the defendant's argument that the "harm . . . for purposes of its mitigation defense, was [its] continuing infringing conduct" because "*Petrella* unequivocally approved the rule of separate accrual and held that every act of copyright infringement is an independently actionable legal wrong," *id.*, this part of our analysis depended solely on the fact that the separate-accrual rule creates a separate limitations period for each infringing act—not that the limitations period starts running when each separate infringement occurs. The first part of the footnote about the separate-accrual rule—"[t]he rule of separate accrual, as discussed in *Petrella*, takes as given that a copyright claim accrues when an infringing act occurs (the 'incident of injury' rule)," *id.* at 271 n.5—"could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it," *Netsphere, Inc.*, 799 F.3d at 333 (citation omitted). We know that this is true because if we "turn the questioned proposition around . . . to assert whatever alternative proposition the court rejected in its favor"—namely, that the separate limitations periods start running when the infringing acts are discovered—"the insertion of the rejected proposition. . . would not require a change in either the court's judgment or the reasoning that supports it." Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1257 (2006).

2.

Next, Hearst argues that *Rotkiske* "fundamentally changes the focus of the relevant analysis" by holding that "the discovery rule does not generally apply to statutes of limitations absent clear language in the statute

to that effect." But Hearst misconstrues *Rotkiske* and overstates the extent to which *Rotkiske* governs this court's interpretation of the Copyright Act.

*Rotkiske* held that the statute of limitations in the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692k(d), "begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." 140 S. Ct. at 358. To start, the Court considered whether § 1692k applied "a general discovery rule as a principle of statutory interpretation." *Id.* at 360. The Court explained that "we begin by analyzing the statutory language," and "[i]f the words of a statute are unambiguous, this first step of the interpretive inquiry is our last." *Id.* The limitations provision in the FDCPA says that an action may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Court held that this "language unambiguously sets the date of the [FDCPA] violation as the event that starts the one-year limitations period." *Rotkiske*, 140 S. Ct. at 360.

Given § 1692k(d)'s unambiguous text, the Court refused "to read in a provision stating that [the] limitations period begins to run on the date an alleged FDCPA violation is discovered." *Id.* The Court called such an attempt to add a discovery rule into a statute where Congress did not include one a "bad wine of recent vintage." *Id.* (quoting *TRW Inc.*, 534 U.S. at 37 (Scalia, J., concurring in judgment)). Although "at the time Congress enacted the FDCPA, many statutes included provisions that . . . would begin the running of a limitations upon the discovery of a violation, injury, or some other event," Congress did not say as much in § 1692k. *Id.* at 361 (emphasis omitted). Thus, the Court declined "to second-guess Congress' decision to include a 'violation occurs' provision, rather than a discovery provision, in § 1692k(d)." *Id.*

No. 22-20333

The Court also noted that "[i]f there are two plausible constructions of a statute of limitations, we generally adopt the construction that starts the time limit running when the cause of action accrues because Congress legislates against the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Id.* at 360 (internal quotation marks and alteration omitted) (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418-19 (2005)). But because the Court decided that § 1692k was unambiguous, it had no occasion in *Rotkiske* to apply this general rule.

Therefore, contrary to Hearst's position, *Rotkiske* did not introduce a clear statement rule that a limitations period runs from the occurrence of the injury unless the statute expressly says that the discovery rule applies. Rather, *Rotkiske* identified how to resolve the limitations question in two categories of cases. First, in cases where a limitations period is unambiguous with respect to what conditions starts the clock running, the statutory language controls. *Rotkiske*, 140 S. Ct. at 360. Second, for cases where "there are two plausible constructions," the court "generally adopt[s] the construction that starts the time limit running when the cause of action accrues." *Id.* (cleaned up).

But *Rotkiske* did not describe how to analyze every statute of limitations in the U.S. Code. Because the limitations period at issue in *Rotkiske* "unambiguously set[] the date of the violation as the event that starts the . . . limitations period," *id.*, the Court did not need to decide whether or under what circumstances an ambiguous limitations period could be construed to apply the discovery rule. Indeed, with respect to ambiguous statutes, while *Rotkiske* said that courts "*generally* adopt the construction that starts the time limit running when the cause of action accrues," *id.* (emphasis added and alteration omitted), it did not survey when courts might permissibly adopt an alternative construction. For example, statutory

17

language describing the limitations period might be ambiguous, yet the only plausible construction might be that the discovery rule applies. *Rotkiske* did not address this scenario.

While *Rotkiske* refused to "enlarge[]" the FDCPA by "read[ing] in" a discovery rule provision and noted that "[a]textual judicial supplementation" of a discovery rule was "particularly inappropriate" because "Congress has enacted statutes that expressly include" discovery rule language, *id.* at 360-61, the Court said so in the context of an unambiguous statute that provided a limitations period "within one year from the date on which the *violation occurs*," 15 U.S.C. § 1692k(d) (emphasis added). The Court did not hold that any ambiguity forecloses application of a discovery rule. And the Court did not hold that the only way that Congress can signal a discovery rule is by using the word "discover."

Accordingly, the issues decided in *Rotkiske* and *Graper* are distinct. *See Gahagan v. USCIS*, 911 F.3d 298, 302-03 (5th Cir. 2018) (In determining whether "a Supreme Court decision involving one statute implicitly overrules our precedent involving another statute," "[t]he overriding consideration is the similarity of the issues decided."). *Rotkiske* declined to read a discovery rule into an unambiguous statute that said that "the date on which the violation occurs" is the date that the limitations period starts. *Graper* interpreted the Copyright Act's limitations period, which provides that a civil action must be "commenced within three years after the claim accrued," 17 U.S.C. § 507(b), as running from the date that infringement is discovered. Unlike the FDCPA, the Copyright Act does not explicitly pin the limitations period to the date that the "violation occurred." *Compare* 17 U.S.C. § 507(b) *with* 15 U.S.C. § 1692k(d).

Further, even assuming, as Hearst argues, that *Rotkiske* "rejects any . . . presumption" that "all federal statutes of limitations, regardless of

context, incorporate a general discovery rule unless Congress has expressly legislated otherwise," *Rotkiske* did not fundamentally change the focus of the analysis in *Graper*. *Graper* did not explain why it was adopting the discovery rule, let alone announce that it was applying such a presumption.[5] *Graper* could have concluded that at the time of § 507(b)'s adoption, a copyright infringement claim accrued in the same manner as other claims that the Supreme Court has decided are controlled by the discovery rule. *See TRW Inc.*, 534 U.S. at 27-28; *Rotella*, 528 U.S. at 556. Had *Graper* reached that conclusion, the court might have further concluded that the only plausible construction of the phrase "claim accrued" in § 507(b) is that the discovery rule applies. *Graper* and *Rotkiske* can be reconciled along those lines.

Finally, Hearst argues that *In re Bonvillian Marine Service, Inc.* "maps perfectly on this case." But *Bonvillian* is an awkward fit.

In *Bonvillian*, the district court dismissed an untimely action under the Limitation of Liability Act of 1851 for lack of subject-matter jurisdiction in accordance with *In re Eckstein Marine Service L.L.C.*, 672 F.3d 310, 315-16 (5th Cir. 2012), which held that the time bar in the Limitation Act was jurisdictional. *Bonvillian*, 19 F.4th at 789-90. In holding that the time bar was jurisdictional, *Eckstein* asserted that "[w]hile many statutory filing deadlines are not jurisdictional, we have long recognized that some are" and the Limitation Act's "requirement is one of these." *Eckstein*, 672 F.3d at 315. To support that proposition, *Eckstein* cited to, among other cases, our decision in *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 646

---

[5] Hearst argues that *Graper* "relied on two pre-*Rotkiske* and *Petrella* cases that employed" this presumption. However, as we explained, *Graper* merely cited those cases for the proposition that "[o]ther circuits agree" that the discovery rule applies, not to incorporate the reasoning of those out-of-circuit cases. *Graper*, 756 F.3d at 393 n.5.

F.3d 185, 189 (5th Cir. 2011), which held that the FTCA's statute of limitations was jurisdictional. *Eckstein*, 672 F.3d at 315 n.12.

On appeal, we concluded that the rule of orderliness did not bind us to *Eckstein*. After we had decided *Eckstein*, in *United States v. Kwai Fun Wong*, the Supreme Court held that procedural rules like time bars are jurisdictional "only if Congress has clearly stated as much." 575 U.S. 402, 409 (2015). And *Wong* had "directly abrogated" *FEMA Trailer*, which was "a logical linchpin" of *Eckstein*. *Bonvillian*, 19 F.4th at 791. So we held that *Wong* "fundamentally change[d] the focus of the relevant analysis," *id.* at 792 (internal quotation marks omitted), because "the *Eckstein* panel largely assumed—by citation to a prior panel's unsupported assumption . . . and by analogy to this court's since-abrogated interpretation of the FTCA's statute of limitations—that [the] action's untimeliness deprives a district court of jurisdiction," while *Wong* said "that the essential hallmark of a jurisdictional procedural rule is a clear congressional statement, which is nowhere to be found in the Limitation Act." *Id.* at 793.

Unlike in *Bonvillian*, here, intervening Supreme Court decisions have not unequivocally established a clear rule for determining when a statute of limitations is triggered by the discovery rule. *Petrella* and *Rotkiske* left room for exceptions, including an exception upon which our court might have relied in *Graper*—the nature of the copyright infringement injury.[6]

---

[6] *Graper*'s reference to out-of-circuit cases using the discovery rule is also different from *Eckstein*'s citation to *FEMA Trailer*. *Eckstein* cited *FEMA Trailer* for an example of a jurisdictional statutory filing deadline and said that the Limitation Act's deadline was analogous. *See* 672 F.3d at 315 n.12. *Graper* cited out-of-circuit cases merely to show that other circuits had reached a similar conclusion as to § 507(b), not to adopt the reasoning of those cases.

This case is more like *Jacobs v. National Drug Intelligence Center* than *Bonvillian*. In *Jacobs*, the defendant appealed the district court's award of emotional-distress damages to the plaintiff under the Privacy Act of 1974, 5 U.S.C. § 552a, arguing that the plaintiff was limited to out-of-pocket expenses. *See* 548 F.3d at 377. In affirming the damages award, we adhered to an earlier decision of this court, *Johnson v. National Drug Intelligence Center*, 700 F.2d 971 (5th Cir. 1983), which held that the Privacy Act's damages remedy included emotional-distress damages, *id.* at 986; *see Jacobs*, 548 F.3d at 377-79. To overcome our rule of orderliness, the appellant argued that "post-*Johnson*, Supreme Court cases have construed other statutory waivers of sovereign immunity narrowly; and therefore, were *Johnson* to be re-decided today, our court's analysis of what damages are recoverable under the Privacy Act might reach a different outcome." *Jacobs*, 548 F.3d at 378. We declined to address whether the outcome in *Johnson* would be different under a present-day analysis because the fact that those intervening Supreme Court cases arguably changed the method for construing statutory waivers of sovereign immunity did not count as an "intervening change in law" that would permit us to overrule *Johnson*. *Id.* "[I]n *Jacobs*, we specifically rejected the idea that later Supreme Court and other decisions that were not directly on point could alter the binding nature of our prior precedent." *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). Here, *Rotkiske* is not "directly on point." *Id.* It leaves room for a Copyright Act discovery rule grounded in the nature of the copyright infringement injury.

3.

Both circuits that have considered whether *Petrella* and *Rotkiske* overturned their Copyright Act discovery rules have rejected the argument and stuck with their precedents.

No. 22-20333

First, in *Sohm v. Scholastic Inc.*, the Second Circuit "decline[d] to alter . . . [c]ircuit[] precedent mandating use of the discovery rule" despite *Petrella* and *Rotkiske*. 959 F.3d 39, 50 (2d Cir. 2020). In the Second Circuit, "a published opinion of a prior panel . . . is binding precedent . . . unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [the Second Circuit] *en banc*." *Id.* (cleaned up). The Second Circuit emphasized that "*Petrella* specifically noted that it was not passing on the question of the discovery rule" and that *SCA Hygiene* "reaffirmed that position." *Id.* Thus, the Second Circuit concluded that "while some language in *Petrella* is perhaps consistent with the [rule that the clock starts running when the infringement occurs], in light of the Supreme Court's direct and repeated representations that it has not opined on the propriety of [these] rules, it would contravene settled principles of *stare decisis* for this Court to depart from its prior holding . . . on the basis of *Petrella*." *Id.* *Rotkiske* did "not persuade [the Second Circuit] to depart from this holding," either. *Id.* at 50 n.2. Because "*Rotskiske*'s holding . . . was based on the Court's interpretation of the FDCPA's text," not "the Copyright Act's statute of limitations," the Second Circuit decided that "*Rotkiske* is inapposite here."[7] *Id.*

Second, in *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, the Ninth Circuit affirmed that *Petrella* did not change its discovery rule. *See* 39 F.4th 1236, 1246 (9th Cir. 2022). The Ninth Circuit read *Petrella* as "acknowledg[ing] that the 'incident of injury' rule it

---

[7] Although *Sohm* adhered to the Second Circuit's discovery rule precedents, following *Petrella*, *Sohm* also held that "a plaintiff's recovery is limited to damages incurred during the three years prior to filing suit." 959 F.3d at 52. Hearst does not argue that this court should adopt a similar interpretation of the Copyright Act, and because the parties have stipulated to the amount of damages to which Martinelli is entitled, this case does not present the issue of whether we should adopt the *Sohm* rule.

described in the main text of the case is not the only accrual rule that federal courts apply in copyright infringement cases" and saying "nothing else about the discovery rule's continued viability." *Id.* at 1242 (cleaned up).

Thus, "[w]ere we to hold" that the discovery rule does not apply to § 507(b), "we would be the only court of appeals to do so after [*Petrella* and *Rotkiske*]." *Gahagan*, 911 F.3d at 304. "We are always chary to create a circuit split, including when applying the rule of orderliness," and we decline to do so in this case. *Id.* (cleaned up).

## III.

For those reasons, the Supreme Court's decisions in *Petrella* and *Rotkiske* did not unequivocally overrule *Graper*. And under *Graper*, Martinelli's copyright infringement claims were timely because he brought them within three years of discovering Hearst's infringements. Accordingly, the judgment of the district court is AFFIRMED.